**SO ORDERED.**

**SIGNED this 12 day of December, 2013.**



_____
A. Thomas Small
United States Bankruptcy Court Judge

_____


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

RICKARD M. MERCER,                    CASE NO. 09-04088-8-ATS

   DEBTOR.                             CHAPTER 11


### ORDER DENYING MOTION TO MODIFY CHAPTER 11 PLAN

The matter before the court is the motion filed by CitiMortgage, Inc., an unsecured creditor in the chapter 11 case of Rickard B. Mercer, to modify, pursuant to 11 U.S.C. § 1127(e), Mr. Mercer's confirmed chapter 11 plan of reorganization.  A hearing was held in Raleigh, North Carolina on November 25, 2013.  The bankruptcy administrator filed a brief in support of the motion to modify.

The essential facts are not contested.  Rickard Mercer, a resident of Dare County North Carolina, who is a general contractor and licensed real estate broker who built, marketed, sold and leased beach properties at the Outer Banks, filed a petition for relief under chapter 11 of the Bankruptcy Code on

1

May 18, 2009. CitiMortgage filed a secured claim (Claim # 3) in the amount of $1,543,555.91 secured by real property located at 10007 Old Oregon Inlet Road, Nags Head, North Carolina. The problem with the secured claim was that although the deed of trust encumbering the property was signed by Mercer, the real property was in fact owned by Mercer's wholly owned company Sea Horse Realty & Construction, Inc. ("Sea Horse"). Mercer objected to CitiMortgage's secured claim on the grounds that the real property that was subject to CitiMortgage's deed of trust was not owned by Mercer, CitiMortgage did not file a response to the objection, and the claim was disallowed on August 12, 2009. In the order disallowing the secured claim, the court held that CitiMortgage's claim of $1,543,555.91 was an unsecured claim.

The debtor's proposed plan of reorganization provided that Class 10, a class of unsecured creditors with claims over $5,500 that included the unsecured claim of CitiMortgage, would be treated as follows:

> (3) <u>Treatment</u>. The approximate general unsecured claims based on claims filed or scheduled as of the date of filing of this Plan is $1,917,273.08. In accordance with the liquidation analysis attached hereto, the Debtor shall pay allowed general unsecured claims a total equal to seventy percent of the net sale proceeds of the Debtor's real properties, after payment of all senior classes, as properties are sold. All payments to this class shall be distributed pro rata.

CitiMortgage did not file an accepting or rejecting ballot, did not object to the plan, and did not appear at the confirmation hearing. No other members of Class 10 filed ballots. At the confirmation hearing on October 7, 2009, counsel for the debtor stated that no holder of a claim in Class 10 filed a ballot, but that a secured creditor, the Bank of Currituck, whose claim made up Class 7, potentially had an unsecured claim in Class 10 if the debtor prevailed in a recently filed adversary proceeding to avoid the Bank of Currituck's security interest in the debtor's real property. The Bank of Currituck's claim was treated in the plan as a secured claim subject to resolution of the adversary proceeding, and it is not clear that the plan received the requisite acceptances of Class 10. The plan was confirmed on November 6, 2009, but the confirmation order does not say whether the plan was confirmed pursuant to 11 U.S.C. § 1129(a) or (b).

According to the confirmed plan, the debtor was to sell its real properties, pay secured creditors with liens on those properties and distribute 70% of the net proceeds to unsecured claimants in Class 10. The debtor had been unable to sell any of his properties in the three years prior to confirmation, but Mercer was optimistic that if his secured creditors would give him time to market the property he could pay his creditors in full. According to the liquidation analysis contained in the

3

disclosure statement, the sales of the debtor's properties would provide enough funds to pay Class 10 claims, including CitiMortgage's claim, in full.  However, more than four years after the plan was confirmed the debtor has sold none of the properties with the exception of a recent sale to Sea Horse that would pay approximately $53,000 to CitiMortgage or just approximately 3.5% of its claim.

On January 19, 2010, a little more than two months after the plan was confirmed, CitiMortgage brought an action in Superior Court for Dare County, to reform its deed of trust so that it would encumber the property owned by Sea Horse.  Sea Horse subsequently filed its own chapter 11 petition for relief, Case # 11-07223-8-ATS, and filed an adversary proceeding, AP #11-00377-8-ATS, for a determination that CitiMortgage does not have a lien on its property and that it has no claim against Sea Horse.  CitiMortgage filed counterclaims including a request to reform the deed of trust.  Bankruptcy Judge J. Rich Leonard ruled that the deed of trust is not valid and that CitiMortgage has no claim, and his decision was affirmed by District Court Judge Louise Flanagan.  CitiMorgage appealed the district court's decision to the United States Court of Appeals for the Fourth Circuit.

The property at 10007 Old Oregon Inlet Road, Nags Head, North Carolina, owned by Sea Horse and that is the subject of

the adversary proceeding between Sea Horse and CitiMortgage was sold with the approval of the bankruptcy court and the order approving the sale provided that the proceeds of the sale, $1,310,610.95, be held in trust pending final resolution of the dispute.  According to CitiMortgage, the sale of the Sea Horse property was unexpected and constitutes a material change in circumstance that along with Mercer's failure to sell his properties justifies modification of Mercer's confirmed chapter 11 plan.  Mercer, however, maintains that the sale of the Sea Horse property was not unexpected and is not material.  Specifically, Mercer argues that his disclosure statement shows his interests in Sea Horse as having a value of $1,045,836.18 and that the value was based on Sea Horse's ownership of the property at Old Oregon Inlet Road.  Additionally, Mercer filed a report in his case prior to confirmation that showed his ownership in Sea Horse and the Old Oregon Inlet Road property owned by Sea Horse with a value of $1,773,384.22.  See Report On Entities In Which Debtor Holds An Interest filed on June 29, 2009.  Mercer argues that CitiMortgage and all other parties in interest knew that he held a 100% ownership interest in Sea Horse and that Sea Horse property valued at more than $1,000,000 was not, under the terms of the plan, to be used to pay the claims of Mercer's unsecured creditors in Class 10.

Section 1127(b) of the Bankruptcy Code provides that after confirmation of a chapter 11 plan, the plan may be modified only before substantial consummation of the plan and then only by the "proponent of a plan or the reorganized debtor." 11 U.S.C. § 1127(b). In 2005, however, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (2005) that amended section 1127 to add subsection (e) which provides that:

> If the debtor is an individual, the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claims, to —
>
>     (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>     (2) extend or reduce the time period for such payments; or
>     (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

In a chapter 11 case, such as the Mercer case, in which the debtor is an individual and payments under the confirmed plan have not been completed, an unsecured creditor, such as CitiMortgage, may propose a modification to increase the amount of payments on claims for a class provided for by the plan. Mercer's plan provided that Class 10 made up of unsecured creditors would receive payments based upon 70% of the net sales

6

proceeds from the sale of specific properties owned by Mercer. CitiMortgage contends that those properties have not sold and that the plan should be modified to require the proceeds from the sale of property owned by Mercer's wholly owned company, Sea Horse, to be used to pay those claims.

Whether or not to modify at the request of an unsecured creditor the confirmed chapter 11 plan of a debtor who is an individual is within the court's discretion. In re Arnold, 869 F.2d 240 (4th Cir. 1989). Unfortunately, as the bankruptcy administrator observed in her brief, case law analyzing § 1127(e) is "sparse." Legislative history with respect § 1127(e) is also sparse and provides little guidance to the court in exercising that discretion. In re Maharaj, 681 F.3d 558, 572 (4th Cir. 2012).

The language of § 1127(e) is virtually identical to the language of § 1229(a) and § 1329(a) which authorize post-confirmation plan modifications proposed by unsecured creditors in chapters 12 and 13. The United States Court of Appeals for the Fourth Circuit has held that when the court considers an unsecured creditor's request to modify under § 1329(a) the debtor's confirmed chapter 13 plan it must determine if there has been substantial and unanticipated change in the debtor's post-confirmation financial condition. Murphy v. O'Donnell (In Re Murphy), 474 F.3d 143 (4th Cir. 2007); In re Arnold, 869 F.2d

7

240 (4th Cir. 1989). Mercer argues that the same test should apply to modifications under § 1127(e). CitiMortgage and the bankruptcy administrator, however, maintain that the court should not be bound by the chapter 13 standard expressed by the Fourth Circuit in Murphy.

According to CitiMortgage and the bankruptcy administrator, the court should adopt a more liberal standard and in support of that contention points to the Fourth Circuit's opinion in Maharaj in which the court quoted a bankruptcy court decision that concluded that each of the new provisions dealing with chapter 11 debtors who are individuals "appears designed to impose greater burdens on individual chapter 11 debtors' rights so as to ensure greater payout to creditors." In re Maharaj, 681 F.3d at 573 (quoting In re Gbadebo, 431 B.R. 222, 229-30 (Bankr. N.D. Cal. 2010)). No doubt § 1127(e) expanded the rights of unsecured creditors by giving them the ability to propose post-confirmation amendments to an individual debtor's plan, but the fact remains that the language of § 1127(e) is nearly identical to that of § 1229(a) and § 1329(a) and that the case law regarding those sections cannot be ignored. The Fourth Circuit in Maharaj, in holding that the BAPCPA amendment regarding debtors who are individuals did not abrogate the "absolute priority rule," rejected the notion that the purpose of all of the BAPCPA changes for individual chapter 11 debtors

8

was to harmonize those debtors' treatment under chapter 11 with those under chapter 13, but the court also observed that "[i]t may well be that Congress intended in some respects to harmonize the provisions of Chapter 11 as they relate to individual debtors with those of Chapter 13." In re Maharaj, 681 F.3d at 574. The post-confirmation modification of plans is one of those instances. "Section 1127(e) was added to the Bankruptcy Code in 2005 for the purpose of making the provisions for postconfirmation of chapter 11 plans when a debtor is an individual similar (but not identical) to the provisions for postconfirmation modifications of chapter 12 or chapter 13 plans." 7 Collier on Bankruptcy ¶ 1127.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Consequently, the case law interpreting post-confirmation plan modifications by unsecured creditors or the trustee under § 1229(a) of 1329(a) are applicable. In chapter 13 "[t]he right of the trustee or the holder of an unsecured claim should be limited to situations in which there has been an unanticipated substantial change in the debtor's income or expenses that was not anticipated at the time of the confirmation hearing." 8 Collier on Bankruptcy ¶ 1329.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). This is the standard of the Fourth Circuit. Murphy v. O'Donnell (In Re Murphy), 474 F.3d 143 (4th Cir. 2007); In re Arnold, 869 F.2d 240 (4th Cir. 1989).

In Murphy, the court held that "when a bankruptcy court is faced with a motion for modification pursuant to §§ 1329(a)(1) or (a)(2) the bankruptcy court must first determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition."  Murphy 474 F.3d at 150. The court further stated that "[i]f the change in the debtor's financial condition was either insubstantial or anticipated, or both, the doctrine of res judicata will prevent the modification of the confirmed plan."  Id.

The justification for applying a "substantial and unanticipated" test when considering post-confirmation modifications in chapter 11 is even stronger than in chapters 12 and 13, because unlike in chapter 12 and 13, creditors have an opportunity to vote for or against a debtor's proposed plan of reorganization.  Even more importantly, unlike debtors in chapter 12 and chapter 13 who have the right under § 1208(b) and § 1307(b) to dismiss their cases if they are dissatisfied with a post confirmation plan modification proposed by an unsecured creditor, a chapter 11 debtor who is an individual does not have the right to dismiss the case and would be bound by the modification.

In Murphy, an opinion that included two different chapter 13 cases, the court held that refinancing a home mortgage was not a substantial change, but that the sale of a debtor's

10

condominium at a 51% increase in price was both substantial and unanticipated.  "A trustee or unsecured claim holder may not raise as grounds for modification under this section [1329(a)] facts that were known and could have been raised in the original confirmation proceedings, because the order of confirmation must be considered *res judicata* as to that set of circumstances.  8 Collier on Bankruptcy ¶ 1329.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

    CitiMortgage and the bankruptcy administrator contend that there are two post-confirmation changes to the debtor's circumstances that are both substantial and unanticipated and that justify modification of the debtor's confirmed plan.  The first is the sale of the property at 10007 Old Oregon Inlet Road owned by Mercer's wholly owned corporation Sea Horse for a purchase price of approximately $1,400,000.  The existence of this property and Mercer's entitlement to the sale proceeds through his ownership of Sea Horse is nothing new.  Mercer's 100% ownership interest of Sea Horse was mentioned in the disclosure statement and the Sea Horse property at 10007 Old Oregon Inlet Road was valued in the debtor's Report On Entities In Which Debtor Holds An Interest at $1,773,384.00.  All creditors knew about the Sea Horse property, but, clearly, the Sea Horse property under the terms of the plan was not to be used to fund the Mercer plan.  No creditor, including

CitiMortgage, objected to that plan.  CitiMortgage, obviously thought it had a claim to the Sea Horse property because it filed a lawsuit in Dare County in January, 2010, shortly after the Mercer plan was confirmed on November 6, 2009, to reform its deed of trust.  The state court action was stayed by Sea Horse's chapter 11 case and subsequently, the bankruptcy court ruled against CitiMortgage's efforts to reform the deed and found that CitiMortgage has no interest in the Sea Horse property and no claim against the Sea Horse estate.  The decision was affirmed by the district court and is on appeal to the court of appeals.  If Mercer's plan had provided for the Sea Horse property to fund the plan, CitiMortgage would have had to share Sea Horse's Old Oregon Inlet property with other members of Class 10.  In any event, the asset was certainly known to CitiMortgage, and CitiMortgage did not object to the Mercer plan that was funded by other Mercer properties.

    The other post-confirmation change to the debtor's circumstances that CitiMortgage says is both substantial and unanticipated is the debtor's failure to sell its real property. At the time of the confirmation hearing, the debtor had not sold any property in more than 3 years, and his reorganization strategy was to market the property over time.  The plan provided for a marketing period after which, if the property was not sold, the secured creditors with security interests in the

property could foreclose.  Mercer had every incentive to sell the properties, as he would receive 30% of the net sale proceeds and if the properties were not sold he ran the risk that his secured creditors would foreclose and he would receive nothing. All unsecured creditors in Class 10 knew that their payments depended on the debtor selling his properties.  That was the plan.  If CitiMortgage had wanted another plan, it could have objected.  It is unfortunate that the plan has not worked out. The debtor still owns all but two of the properties (one sold and one foreclosed) and if the remaining properties are sold for more than the mortgages, CitiMortgage's claim could still be paid.  But, if the properties never sell for more than the amount of the secured debt encumbering those properties, that possibility was certainly a foreseeable consequence of the plan that CitiMortgage was apparently content for the court to confirm.

Accordingly, the motion to modify is **DENIED**.

**END OF DOCUMENT**